IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STEPHANIE D. CULP,                    )
                                      )
            Plaintiff,                )
                                      )
      v.                              )        Civ. No. 15-294-LPS
                                      )
CAROLYN W. COLVIN,                    )
ACTING COMMISSIONER OF                )
SOCIAL SECURITY,                      )
                                      )
            Defendant.                )

Oderah C. Nwaeze, DUANE MORRIS LLP, Wilmington, DE.

      Attorney for Plaintiff.


Heather Benderson, Special Assistant United States Attorney, OFFICE OF THE GENERAL
COUNSEL, Philadelphia, PA.

      Attorney for Defendant.


**MEMORANDUM OPINION**


September 27, 2016
Wilmington, Delaware

STARK, U.S. District Judge:

## I.    INTRODUCTION[1]

Plaintiff Stephanie D. Culp ("Culp" or "Plaintiff") appeals from the decision of Carolyn W. Colvin, the Acting Commissioner of the Social Security Administration ("the Commissioner" or "Defendant"), denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II, 42 U.S.C. §§ 401-434 ("Title II") and Title XVI, 42 U.S.C. §§ 1381-1383 ("Title XVI") of the Social Security Act.  The Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).  Before the Court are cross-motions for summary judgment filed by Plaintiff and the Commissioner.  (D.I. 12, 14)

Plaintiff seeks DIB from October 21, 2008 through the present or, in the alternative, asks for remand and further proceedings before the Commissioner.  (D.I. 13 at 1)  The Commissioner requests that the Court affirm the decisions denying Plaintiff's application for benefits.  (D.I. 15 at 20)

For the reasons set forth below, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment.

## II.    BACKGROUND

### A.    Procedural History

On March 24, 2011, Plaintiff filed a Title II application for disability insurance benefits. (D.I. 8 ("Tr.") at 139-40)  On March 28, 2011, Plaintiff filed a Title XVI application for supplemental social security income.  (*Id.* at 141-50)  Plaintiff's applications were denied at the

---

[1]Unless otherwise indicated, all facts are taken from the supporting briefs submitted by the parties and the case record.

initial level of administrative review on September 1, 2011, and they were denied on

reconsideration on December 16, 2011. (*Id.* at 80-86)  After a hearing before an Administrative

Law Judge ("ALJ") on June 19, 2013, the ALJ issued a decision on August 2, 2013, finding that

Plaintiff did not have a disability within the meaning of the Social Security Act because her

alleged conditions were not severe enough to prevent her from working. (*Id.* at 28, 48)  Plaintiff

filed a request for review of the hearing decision and order, which was denied. (*Id.* at 1)  Thus

the ALJ's decision of August 2, 2013, became the Commissioner's final decision. (*Id.*)

On April 6, 2015, Plaintiff filed suit in the District of Delaware, seeking judicial review

of the Commissioner's denial of benefits. (D.I. 1)  The parties completed briefing on their cross-

motions for summary judgment on February 22, 2016. (*See* D.I. 13, 15)

**B.     Factual History**

Plaintiff was 33 years old at the onset of her alleged disability. (Tr. at 65)  She has a high

school education and has previously worked as an assembler/tester and as a dietary aide. (*Id.* at

53-54)  Plaintiff contends that she could not work because she has narcolepsy, depression, and

anxiety. (*Id.* at 57)

**1.     Plaintiff's Testimony**

On June 19, 2013, Plaintiff testified before the ALJ in support of her petition for benefits.

(*Id.* at 48-72)  She said that her most recent employer had fired her in October 2008 due to

mistakes and lateness; she also claimed to have had trouble concentrating at that job. (*Id.* at 52)

She also testified that she could not sit for more than approximately half an hour before needing a

break and that she frequently fell asleep throughout the day. (*Id.* at 61)  Plaintiff stated she had

difficulty managing household chores. (*Id.* at 59)  Her activities of daily living include walks

with her children and dogs and using the computer for e-mail, social media, and playing games. (*Id.* at 56-57)  In March 2011, Plaintiff had applied for a job at McDonald's. (*Id.* at 215)  She testified that her medications had been helping her without any side effects. (*Id.* at 58)

### 2.    Doctors' reports

#### a.    Dr. Robert Callahan

Plaintiff began seeing Dr. Callahan in April 2007 for depression and sleep problems, and she continued to see him through March 2013 for various conditions, including narcolepsy, fatigue, anxiety, and bipolar disorder. (*Id.* at 274-315)  Dr. Callahan prescribed Plaintiff several medications during this period, including Adderall, Concerta, Effexor, Lexapro, Paxil, Provigil, Ritalin, Rozerem, and Wellbutrin. (*Id.* at 312-15)  In March 2010, Plaintiff reported to Dr. Callahan that her ADD and mood medications were working well. (*Id.* at 280)

In a patient questionnaire completed on January 25, 2012, in support of Plaintiff's benefits application, Dr. Callahan opined that Plaintiff could sit for one hour and stand or walk for 2-3 hours during an eight-hour workday, frequently lift 10 pounds and carry five pounds, and occasionally lift 50 pounds and carry 20 pounds. (*Id.* at 485-92)  He also stated that she would require frequent unscheduled breaks during the workday, could not tolerate even low levels of stress, and was likely to miss more than three days of work per month. (*Id.* at 490-91)  Dr. Callahan reported no significant changes in Plaintiff's condition through March 2013. (*Id.* at 601-11)

#### b.    Dr. Joshua N. Aaron

Plaintiff began seeing Dr. Aaron in December 2007 for various symptoms of sleep disturbance. (*Id.* at 242)  He conducted sleep studies and tests, diagnosing her with a variety of

conditions that included narcolepsy, insomnia, snoring, nightmares, night terrors, hypnagogic

hallucinations, chronic anxiety and depression, and severe period limb movement disorder. (*Id.*

at 242-73, 348, 588) He also prescribed Plaintiff Adderall, Provigil, and Xyrem. (*Id.* at 348) In

December 2010 and again throughout 2011 and 2012, he reported that Plaintiff's medications

had stabilized her narcolepsy without significant side effects. (*Id.* at 322, 326-27, 429, 433, 456,

460, 518-19)

Dr. Aaron completed a patient sleep disorder questionnaire on September 4, 2012, in

support of Plaintiff's benefits application, opining that Plaintiff should avoid work involving

climbing, heights, machinery, or a lack of close supervision. (*Id.* at 588-92)

### c. Dr. Praful C. Desai

Plaintiff was treated by Dr. Desai beginning in June 2008 for bipolar disorder and

attention deficit disorder. (*Id.* at 495) He continued treating her through June 2013, during

which time he prescribed Abilify, Adderall, Cymbalta, and Provigil. (*Id.* at 373-78, 618-25) He

reported in several progress notes that Plaintiff was sleeping well. (*Id.* at 373-78, 392, 442, 618-

25)

Dr. Desai completed a psychiatric/psychological impairment questionnaire on May 21,

2013, in support of Plaintiff's benefits application, in which he gave Plaintiff a global assessment

of functioning ("GAF") score of 60.[2] (*Id.* at 495-502) He reported sleep and mood disturbance,

---

[2]GAF scores of 51-60 indicate moderate symptoms or moderate difficulty in social, occupation, or school functioning; GAF scores of 61-70 indicate mild symptoms or some difficulty in social, occupation, or school functioning, but otherwise generally functioning well with some meaningful interpersonal relationships; and GAF scores of 71-80 indicate transient or no symptoms and expected reactions to psychosocial stressors, with at most slight impairments in social, occupational, or school functioning. *See DSM-IV* at 34.

decreased energy, irritability, and difficulty concentrating. (*Id.* at 496) He opined that Plaintiff was markedly limited in her ability to process instructions, accept criticism, or respond to changes in a work setting. (*Id.* at 498-500) Dr. Desai's examinations of Plaintiff in 2013 found normal concentration, intact memory, and a good fund of knowledge. (*Id.* at 623-25)

### d. Residual Functional Capacity ("RFC") Assessments

The ALJ utilized the findings of three experts in making her RFC determination: Dr. Frederick Kurz, state-agency expert psychologist Dr. Pedro Ferreira, and the vocational expert, Ms. Anisharis. Drs. Kurz and Ferreira assessed Plaintiff in August and December 2011, respectively, as part of the initial review of Plaintiff's application. The vocational expert testified at the hearing before the ALJ on June 19, 2013. (*See* D.I. 8 at 65-70, 406-10, 470-72)

On August 16, 2011, Plaintiff saw Dr. Kurz for a consultative examination, where she reported symptoms of chronic fatigue and irritability and stated she could not work due to bipolar disorder, depression, and narcolepsy. (*Id.* at 406-09) She also stated she was her family's primary caretaker and described her medications as effective. (*Id.* at 407) Dr. Kurz diagnosed Plaintiff with a mood disorder and assessed a GAF score of 65, indicating mild symptoms in social and occupational functioning. (*Id.* at 408) He found that Plaintiff's memory and cognitive skills were intact. (*Id.* at 407-08)

Dr. Ferreira completed a psychiatric review and mental RFC assessment of Plaintiff on December 16, 2011. (*Id.* at 470-82) He found Plaintiff to be capable of performing simple, routine work. (*Id.* at 472).

At Plaintiff's hearing on June 19, 2013, the ALJ asked the vocational expert to consider a hypothetical individual similar to Plaintiff in age, education, work history, and physical and

workplace capabilities. (*Id.* at 65-70) Specifically, the hypothetical individual was one with "mild limits in socialization; moderate limits in concentration and persistence; [and] mild limits in activities of daily living." (*Id.* at 66) The expert determined that such an individual could perform Plaintiff's past relevant work as a dietary aide, as well as the occupations of cashier, retail marker, and information clerk. (*Id.* at 67-68)

### C.    The ALJ's Findings

Plaintiff appeals the ALJ's August 2, 2013 decision, which made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.    The claimant has not engaged in substantial gainful activity since October 21, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 20 CFR 416.971 *et seq.*).

3.    The claimant has the following severe impairments: narcolepsy; bipolar disorder; and history of attention-deficit disorder (ADD) (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).[3]

5.    After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can sit as much as 6 hours and stand/walk as much as 6 hours in a given work day; should be afforded the ability to sit or stand at will; she can occasionally stoop, crouch, crawl, squat, kneel, balance, and climb stairs. Her work should not require that she use ladders/scaffolds, or work at dangerous heights or with dangerous machinery. She should avoid concentrated exposure to heat, cold, dust, fumes, gases, or vibrations; she is further limited to using simple, routine instructions.

---

[3]The ALJ found that the Plaintiff had mild restrictions in activities of daily living and social functioning, and moderate difficulties with regard to concentration, persistence or pace.

6. The claimant is capable of performing past relevant work as a dietary aide. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 21, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(*Id.* at 33-41)

## III. LEGAL STANDARDS

### A. Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining the appropriateness of summary judgment, the Court must "review the record taken as a whole . . . draw[ing] all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000) (internal quotation marks omitted). If the Court is able to determine that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

### B. Review of the ALJ's Findings

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v.*

*Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record.  *See Monsour*, 806 F.2d at 1190-91.  The Court's review is limited to the evidence that was actually presented to the ALJ.  *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001).  However, evidence that was not submitted to the ALJ can be considered by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g).  *See Matthews*, 239 F.3d at 592.  "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence."  *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has explained that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion."  *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).  Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable.  *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1983).  Even if the reviewing Court would have decided the case differently,

it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## IV.  DISCUSSION

### A.  Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the SSI program. *See* 42 U.S.C. § 1382(a).  A "disability" is defined for purposes of SSI and DIB as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 1382c(a)(3).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(l)(B); *see also Barnhart v. Thomas*, 540 U.S. 20, 21-23 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 CFR § 416.920; *see also Russo v. Astrue*, 421 F. App'x 184, 188 (3d Cir. Mar. 21, 2011).  If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. § 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(i) (mandating finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 CFR § 416.920(a)(4)(ii) (mandating finding of non-disability when claimant's impairments are not severe). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 416.920(a)(4)(iii). When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See id.* If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. § 416.920(e).

At step four, the Commissioner determines whether the claimant retains the RFC to perform her past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv) (stating claimant is not disabled if able to return to past relevant work). A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999) (internal citation omitted).

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to

10

any other available work. *See* 20 C.F.R. § 416.920(a)(4)(v) (mandating finding of non-disability when claimant can adjust to other work); *see also Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See id.* In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [her] medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

**B.     Arguments on Appeal**

Plaintiff contends that the ALJ: (1) "failed to properly weigh the medical opinion evidence and failed to properly determine Ms. Culp's residual functional capacity;" (2) "failed to properly evaluate Ms. Culp's credibility;" and (3) "relied on flawed vocational expert testimony." (D.I. 13 at 1-2) In response, the Commissioner argues that the ALJ's findings were supported by substantial evidence and that the decision should be affirmed. (D.I. 15 at 1-2) The Court addresses the parties' disputes below.

**1.     Treating physician rule**

Plaintiff argues that the ALJ improperly failed to give controlling or adequate weight to the opinions of her treating physicians, Drs. Callahan, Aaron, and Desai. (D.I. 13 at 16) Defendant responds that the ALJ reasonably assigned little weight to the treating physicians' opinions, because those opinions were inconsistent with substantial evidence in the record. (D.I. 15 at 13-16)

11

The Third Circuit subscribes to the "treating physician doctrine." *See Mason v. Shalala,* 994 F.2d 1058, 1067 (3d Cir. 1993). According to this rule, a treating physician's opinion is accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and it is not inconsistent with the other substantial evidence in the record." *Fargnoli,* 247 F.3d at 43. "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer,* 186 F.3d at 429 (internal citation omitted).

When there is medical evidence contradicting the treating physician's view, the ALJ must carefully evaluate how much weight to accord the treating physician. *See Gonzalez,* 537 F. Supp. 2d at 660. A decision not to give controlling weight to the opinion of a treating physician does not automatically result in giving no weight whatsoever to that opinion. *See id.* In doing so, an ALJ must weigh all the evidence and resolve all material conflicts. *See Barnhill v. Astrue,* 794 F. Supp. 2d 503, 515 (D. Del. 2011).

If a treating physician's opinion is not given controlling weight, the ALJ should consider numerous factors in determining the weight to give it, including: the length, nature, and extent of the treatment relationship; the frequency of examination; the amount of medical evidence offered in support of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the treating physician. *See* 20 C.F.R. §§ 416.1527(c)(2)-(6). Further, when an ALJ's decision is to deny benefits, the notice of the determination must

> contain specific reasons for the weight given to the treating
> source's medical opinion, supported by substantial evidence in the
> case record and must be sufficiently specific to make clear to any
> subsequent reviewers the weight the adjudicator gave the treating
> source's medical opinion and the reasons for that weight.

S.S.R. 96-2p, 1996 WL 374188, at 5.

In evaluating this evidence, the ALJ should be mindful that "non-examining state agency medical and psychological consultants are 'highly qualified' physicians and psychologists and 'experts in the evaluation of the medical issues in disability claims under the Social Security Act (the 'Act'),' [and] their opinions on [a] claimant's residual functional capacity are entitled to weight." *Jopson v. Astrue*, 517 F. Supp. 2d 689, 702 (D. Del. 2007) (citing 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("[S]tate agency opinions merit significant consideration."); *Coleman v. Comm'r of Soc. Sec.*, 494 F. App'x 252, 254 (3d Cir. July 13, 2012).

In reviewing the ALJ's analysis, it is not for the Court to re-weigh the medical opinions in the record. *See Gonzalez*, 537 F. Supp. 2d at 659. Rather, the Court must determine whether substantial evidence exists to support the ALJ's weighing of those opinions. *See id.*

### a. The treating physicians

Here, the ALJ declined to give controlling weight to the opinions of Plaintiff's treating physicians. (Tr. at 38-39) The ALJ found Dr. Callahan's opinion to be unsupported by the treatment record, because Dr. Callahan possessed minimal documentation and did not perform objective testing. (*Id.* at 38) In addition, the consultative psychologist's testing indicated that Plaintiff possessed intact memory and cognitive skills. (*Id.*)

The ALJ also gave limited weight to Dr. Aaron's opinion that Plaintiff would require

supervised work and frequent breaks and would likely be absent more than three times per month. (*Id.* at 39) The ALJ found this opinion to be inconsistent with the results of Plaintiff's follow-up visits with Dr. Aaron, where Plaintiff was found to be stable on medication. (*Id.*) The ALJ also found Dr. Aaron's opinion to be inconsistent with the fact that he never suggested any restrictions on driving and other activities, as well as the fact that Plaintiff did not report unpredictable spells or falling asleep outside the home. (*Id.*)

Finally, the ALJ gave little weight to Dr. Desai's opinion that Plaintiff had significant mental limitations and would be unable to perform even low stress work. (*Id.*) The ALJ found this to be inconsistent with Dr. Desai's finding that Plaintiff had a GAF score of 60, which is indicative of borderline mild symptoms. (*Id.*) The ALJ also found Dr. Desai's opinion to be inconsistent with the nature of his treatment, which consisted of medication management appointments. (*Id.*) Most of the records from these appointments indicated that Plaintiff was doing well on medication. (*Id.*) Dr. Desai did not perform psychological testing, and the ALJ found his opinion inconsistent with the consultative psychologist's findings that Plaintiff's memory and cognitive skills were intact. (*Id.*) The ALJ further found Dr. Desai's opinion to be inconsistent with Plaintiff's extensive daily activities, including driving, household chores, and computer use. (*Id.*)

### b.     The non-treating physicians

The opinions of non-treating physicians must be examined for whether, and how well, these opinions take into account other evidence in the record, including the view of treating physicians. *See* 20 CFR § 416.927(c)(3). "[B]ecause nonexamining sources have no examining or treating relationship with [the patient], the weight [given to] their opinions will depend on the

degree to which they provide supporting explanations for their opinions." *Id.* The ALJ must

evaluate how these opinions consider all relevant evidence, including the opinions of treating

physicians and other examining sources. *See id.*

The ALJ gave significant weight to non-treating physician Dr. Kurz's opinion that

Plaintiff's cognition and memory were intact, as well as his GAF score of 65, which indicated

mild symptoms. (Tr. at 37) The ALJ found his opinion to be supported by medically acceptable

clinical and laboratory findings and consistent with the RFC and the record when viewed in its

entirety. (*Id.*) The ALJ could rely on Dr. Kurz's opinion because he examined Plaintiff and his

opinion was based on familiarity with the Social Security Rules and Regulations. (*Id.* at 410)

The ALJ also accepted Dr. Ferreira's opinion regarding Plaintiff's mental functioning and

ability to perform simple routine work. (*Id.* at 38, 472) The ALJ found his opinion to be

consistent with the evidence in the record, including Plaintiff's activities of daily living and the

findings of Dr. Kurz's consultative examination. (*Id.*)

### c.      The ALJ's conclusions are supported by the record

For these reasons described above, which are explained even more thoroughly in the

ALJ's opinion itself, the Court finds that the ALJ fulfilled her obligation to explain why she did

not give controlling weight to the opinions of the three treating physicians, and why she accorded

their opinions – and those of the non-treating physicians – the weight she did. Substantial

evidence supports the ALJ's determinations.

### 2.      Plaintiff's credibility

Plaintiff argues that the ALJ failed to properly evaluate her credibility. (D.I. 13 at 18) An

ALJ must follow a two-step process in evaluating a claimant's credibility. First, the ALJ must

15

"consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p, 1996 WL 374186 (July 2, 1996). Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* At this second step, an ALJ considers: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See id.*

Regulations instruct the ALJ to evaluate the consistency of a claimant's statements with the evidence of record. *See* 20 CFR § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you.").

Here, the ALJ properly considered the factors identified above and found that Plaintiff's medical complaints could reasonably be expected to cause the alleged symptoms about which she

16

testified at the hearing.  However, the ALJ also found that Plaintiff's claims concerning the

intensity, persistence, and limiting effects of these symptoms were not consistent with the

evidence or the RFC assessment.  (Tr. at 37)  Specifically, the ALJ noted that Plaintiff's

narcolepsy was stable with medication, with no reported side effects.  (*Id.*)  Likewise, Plaintiff

was not recommended an increase in medication or more intensive treatment.  (*Id.*)  She was also

able to drive with no restrictions and perform everyday tasks such as cooking and using the

computer.  (*Id.* at 37-38)

        For these and other reasons discussed by the ALJ (*see id.* at 35-40), the Court concludes

there is substantial evidence to support the ALJ's assessment of Plaintiff's credibility, and the

Court will not supplant this assessment.

        **3.**      **Vocational expert testimony**

        Finally, Plaintiff argues that the ALJ relied on flawed vocational expert testimony

because the ALJ failed to accurately describe all of Plaintiff's mental limitations.  (D.I. 13 at 19)

Among the ALJ's findings were that Plaintiff had moderate difficulties with concentration,

persistence, or pace.  (Tr. at 34)  Plaintiff argues that the ALJ failed to include these restrictions

in the hypothetical presented to the vocational expert, describing Plaintiff as only limited to

paying attention at the level of simple, unskilled work.  (D.I. 13 at 19)  However, the ALJ also

stated that the hypothetical individual would have "mild limits in socialization; moderate limits

in concentration and persistence; [and] mild limits in activities of daily living." (Tr. at 66)  Thus

the ALJ adequately captured Plaintiff's mental limitations in her hypothetical description to the

vocational expert.

        Plaintiff relies on *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), to argue that when a

hypothetical question does not accurately describe all of a claimant's mental and physical limitations, the vocational expert's opinion is not supported by substantial evidence.  Given that the ALJ included limits in concentration and persistence in her hypothetical, the ALJ has sufficiently accounted for Plaintiff's limitations.  *See McDonald v. Astrue*, 293 F. App'x 941, 946-47 (3d Cir. Sept. 26, 2008) (noting that ALJ properly accounted for his finding that claimant had moderate limitations in concentration by limiting him to simple, routine tasks); *Menkes v. Astrue*, 262 F. App'x 410, 412 (3d Cir. Dec. 20, 2007) ("Having previously acknowledged that [the claimant] suffered moderate limitations in concentration, persistence and pace, the ALJ [properly] accounted for these mental limitations in the hypothetical question by restricting the type of work to 'simple routine tasks.'").

For these reasons, the Court finds that the ALJ sufficiently accounted for all of Plaintiff's physical and mental limitations, including her deficiencies in concentration, persistence, and pace, in describing the hypothetical individual to the vocational expert.

## V.     CONCLUSION

Given the substantial evidence supporting the ALJ's findings, the Court concludes that neither an award of benefits nor a remand is warranted.  Accordingly, the Court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment. An appropriate Order follows.